Polsinelli Shughart PC
Justin K. Edelson
222 Delaware Avenue, Suite 1101
Wilmington, DE 19801
302.252.0922

Attorneys for Defendants BioFuels of Colorado, LLC, Thomas Davanzo and Robert
Fedyna

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SOLVERDI WORLDWIDE, LLC<br>SOLVERDI, LLC<br>WHITE MOUNTAIN GROUP,<br>LLC, | : | HON. DICKINSON R. DEBEVOISE |
| | : | Civil Action No. 09-5060 (DRD)(WJM) |
| Plaintiffs, | : | **ANSWER AND COUNTERCLAIM** |
| v. | : | |
| BIOFUELS OF COLORADO, LLC<br>THOMAS A. DAVANZO<br>ROBERT FEDYNA<br>Investor Does 1-10,<br>Customer Does 1-10, | : | |
| Defendants. | : | |

## I.    ANSWER

Defendants BioFuels of Colorado, LLC (BioFuels), Thomas Davanzo and
Robert Fedyna answer Plaintiffs' complaint as follows:

1.    Denied.

2611982

**PARTIES**

2.      Defendants neither admit nor deny Plaintiffs' allegations regarding their own status, but have no current reason to contest them.

3.      Defendants neither admit nor deny Plaintiffs' allegations regarding their own status, but have no current reason to contest them.

4.      Defendants neither admit nor deny Plaintiffs' allegations regarding their own status, but have no current reason to contest them.

5.      Admitted.

6.      Davanzo is a manager of BioFuels, not an officer or director of BioFuels.  Otherwise admitted.

7.      Fedyna is not an officer or director of BioFuels.  Otherwise admitted.

8.      Denied.

9.      Denied.

10.     Denied

**JURISDICTION AND VENUE**

11.     Admit that this Court has properly assumed jurisdiction over this matter.

12.     Admit that venue is proper.

**MATERIAL BACKGROUND FACTS**

13.     Denied.  Solverdi does not own rights to the Intellectual Property or Transformer at issue in this litigation.  (Defendants use the capitalized terms as defined in the complaint, subject to correction of Solverdi's false claims of ownership.)  BioFuels, as assignee of CarrierConnect LLC, owns the rights to the Intellectual Property at issue in this action and licensed some of those rights to Solverdi.  Solverdi essentially commissioned the construction of a Transformer from Olson Precast Company but did not pay for it.  Solverdi has settled litigation with Olson Precast concerning, *inter alia* ownership and possessory rights to the Transformer, and as a result of that settlement Solverdi has no rights at all to the Transformer.

14.     Defendants admit that the Transformer's technology includes valuable trade secrets which are owned by BioFuels, not Solverdi.

15.     Denied as stated.  Davanzo met with Solverdi between January and August 2008 regarding the Intellectual Property, which meetings culminated in a license agreement in which CarrierConnect LLC (a Colorado company owned and managed by Davanzo) licensed certain rights to use CarrierConnect's Intellectual Property (invented and developed by Davanzo and now owned by BioFuels) to Solverdi (the CarrierConnect-Solverdi License Agreement) Solverdi does not own this Intellectual Property.

16.     Denied.  Davanzo is the inventor of the Intellectual Property used to construct the Transformer, as Solverdi expressly acknowledged in page 10 paragraphs NN and OO of the CarrierConnect-Solverdi License Agreement.

17.     Denied as stated.  Solverdi and 3A3B LLC did indeed enter into the Supply Agreement, but Solverdi did not license any of its own technology to 3A3B. Rather, Solverdi licensed the technology that it had obtained from CarrierConnect and Davanzo under the CarrierConnect-Solverdi License Agreement, as set forth in page 7 ¶ X of the CarrierConnect-Solverdi License Agreement.

18.     Admit that Olson Precast Company under Michael Olson constructed a Transformer as called for in the Supply Agreement and CarrierConnect-Solverdi License Agreement.  Deny that Solverdi had an exclusive right to use the Transformer.

19.     Deny that Solverdi had an exclusive right to use the Transformer. Otherwise admitted.

20.     Admitted.

21.     Admit that the Technology showed promise in a laboratory setting.

22.     Admitted.

23.     Denied.  Davanzo did not devise a scheme to steal the Transformer. Rather, Solverdi breached the Supply Agreement by failing to pay Olson Precast for

the Transformer and thereby lost its rights to the Transformer; Olson Precast then reconfigured the Transformer and offered to sell this reconfigured machine to Davanzo; and BioFuels agreed to lease the reconfigured machine from Olson Precast to produce home heating oil.

24.     Denied.

25.     Admit that BioFuels leased a reconfigured machine from Olson Precast. Otherwise denied.

26.     Admit that the Transformer incorporated confidential and proprietary technology.   Otherwise denied.   The Transformer's technology was invented by Davanzo, is owned by BioFuels, and was only licensed to Solverdi.

27.     Denied.

28.     Denied.

29.     Denied.

30.     Denied.

## SOLVERDI'S TRADE SECRETS

31. Denied.  Davanzo invented the Intellectual Property incorporated into the Transformer.  That Intellectual Property is owned by BioFuels, not Solverdi. Solverdi was a mere licensee of this Intellectual Property.

32.     Deny last sentence.  Otherwise admit.

33.     Denied as stated.   Davanzo invented the Intellectual Property incorporated into the Transformer.  That Intellectual Property is owned by BioFuels, not Solverdi.  Solverdi was a mere licensee of this Intellectual Property.  Solverdi at one time had the right to use the Transformer to produce biodiesel under the royalty arrangement set forth in the CarrierConnect-Solverdi License Agreement.

34.     Admit that the Transformer, as designed and if fully operational, would have contained advantageous new technologies.

35.     Denied as stated.  Solverdi did not develop but rather licensed the technology used in the Transformer from CarrierConnect.

36.     Defendants can neither admit nor deny Solverdi's allegations regarding Solverdi's efforts to maintain confidentiality of the Intellectual Property.

37.     Defendants can neither admit nor deny Solverdi's allegations regarding Solverdi's efforts to maintain confidentiality of the Intellectual Property.

38.     Defendants can neither admit nor deny Solverdi's allegations regarding the time and expense Solverdi incurred in acquiring the Intellectual Property from CarrierConnect.  Otherwise denied.

39.     No response is required.

40.    Denied.  CarrierConnect's assignee BioFuels is the sole owner of the Trade Secrets, as Solverdi expressly acknowledged at page 10 ¶¶ NN and OO of the CarrierConnect-Solverdi License Agreement.

41.    Admit that the Trade Secrets belong to BioFuels and are valuable. Otherwise deny.

42.    Admit.

43.    Deny as stated.  Davanzo knows about the Trade Secrets because he invented them, not because he learned about them through meetings with Solverdi.

44.    Deny as stated.  Davanzo knows about the Trade Secrets because he invented them, not because he learned about them through meetings with Solverdi.

45.    Deny as stated.  Davanzo and BioFuels own and possess the Trade Secrets because Davanzo invented them, not because he learned about them through meetings with Solverdi.

46.    Denied.

## DEFENDANT'S WRONGFUL CONDUCT

47.    Deny as stated.  Davanzo knows about the Trade Secrets because he invented them, not because he learned about them through meetings with Solverdi. Solverdi does not own but only licensed the Trade Secrets.

48.     Admit that the test reactor was incorporated into a machine that at one time was intended to be the Transformer, but was reconfigured into a different machine by its maker Olson Precast upon Solverdi's refusal to pay for the Transformer.

49.     Deny as stated.  Defendants knew about the Transformer as licensors of the Trade Secrets to Solverdi.

50.     Denied.  Davanzo did not devise a scheme to steal the Transformer. Rather, Solverdi breached the Supply Agreement by failing to pay Olson Precast for the Transformer and thereby lost its rights to the Transformer; Olson Precast then reconfigured the Transformer and offered to sell this reconfigured machine to Davanzo; and BioFuels agreed to lease the reconfigured machine from Olson Precast to produce home heating oil.

51.     Denied.

52.     Denied.

53.     Admit that Davanzo communicated to Solverdi that he did not have the Transformer and did not know where it was.  Otherwise deny.

54.     Denied.

55.     Denied.

56.     Denied.

57.     Denied.

58.     Denied.

59.     Denied.

60.     Denied.

61.     Denied.

## <u>RESULTING DAMAGE TO SOLVERDI</u>

62.     Denied as stated.  Due to its breach of the Supply Agreement, Solverdi does not have a Transformer or any rights to a Transformer.  BioFuels is the lawful lessee of the reconfigured machine that was once being built as the Transformer.

63.     Denied.

64.     Denied.

65.     Denied.

66.     Denied.

67.     Denied.

68.     Denied.

69.     Denied.

70.     Denied as stated.  Solverdi does not own the Trade Secrets.  Defendants have not yet processed any fuels using the reconfigured machine that was once being developed as the Transformer.

2611982

9

71.     No response is required.

## RESPONSE TO FIRST CAUSE OF ACTION

## (COMMON LAW MISAPPROPRIATION OF TRADE SECRETS)

72.     Defendants incorporate all prior paragraphs.

73.     Denied.

74.     Denied.

75.     Denied.

76.     Denied.

77.     Admit that the Trade Secrets are valuable for the reasons alleged.  Deny that the Trade Secrets are owned by Solverdi.

78.     Defendants cannot admit or deny the efforts undertaken by Solverdi to protect the Trade Secrets that it licensed from CarrierConnect.

79.     Denied.

80.     Denied.

81.     Denied.  Solverdi has no remedy at all because it has no claims.

82.     Denied.

83.     Denied.

84.     Denied.

85.     Denied.

## RESPONSE TO SECOND CAUSE OF ACTION

## (CONVERSION)

86.    Defendants incorporate all prior paragraphs.

87.    Denied.

88.    Denied.

89.    Denied.

90.    Denied.

91.    Denied.

92.    Denied.

93.    Denied.

94.    Denied.

## RESPONSE TO THIRD CAUSE OF ACTION

## (NEW JERSEY RICO)

95.    Defendants incorporate all prior paragraphs.

96.    Admitted.

97.    Denied.

98.    Denied.

99.    Denied.

100.   Denied.

101.   Denied.

102.   Denied.

103.   Denied.

104.   Denied.

105.   Denied.

106.   Denied.

107.   Denied.

## RESPONSE TO FOURTH CAUSE OF ACTION

## (FEDERAL RICO)

108.   Defendants incorporate all prior paragraphs.

109.   Denied.

110.   Denied.

111.   Denied.

112.   Denied.

113.   Denied.

114.   Denied.

115.   Denied.

116.   Denied.

117.   Denied.

## RESPONSE TO FIFTH CAUSE OF ACTION

## (UNJUST ENRICHMENT)

118.   Defendants incorporate all prior paragraphs.

119.   Denied.

120.   Denied.

121.   Denied.

122.   Denied.

## RESPONSE TO SIXTH CAUSE OF ACTION

## (INTERFERENCE WITH CONTRACT OR BUSINESS EXPECTANCY)

123.   Defendants incorporate all prior paragraphs.

124.   Denied as stated.  Solverdi may have once had business expectancies consistent with the CarrierConnect-Solverdi License Agreement and Supply Agreement, but Solverdi lost those expectancies when it breached and/or repudiated those agreements.  Solverdi can now have no reasonable business expectancies stemming from these agreements, the Trade Secrets, or the Transformer.

125.   Denied per paragraph 124.

126.   Denied.

127.   Denied.

128.   Denied.

129.   Denied.

130.   Denied.

## RESPONSE TO SEVENTH CAUSE OF ACTION

## (INTERFERENCE WITH CONTRACTUAL RELATIONS OR

## PROSPECTIVE ECONOMIC ADVANTAGE)

131.   Defendants incorporate all prior paragraphs.

132.   Denied as stated.   Solverdi may have once had business expectancies consistent with the CarrierConnect-Solverdi License Agreement and Supply Agreement, but Solverdi lost those expectancies when it breached and/or repudiated those agreements.   Solverdi can now have no reasonable business expectancies stemming from these agreements, the Trade Secrets, or the Transformer.

133.   Denied per paragraph 132.

134.   Denied.

135.   Denied.

136.   Denied.

137.   Denied.

138.   Denied.

139.   Denied.

## RESPONSE TO EIGHTH CAUSE OF ACTION

**(UNFAIR COMPETITION)**

140.   Defendants incorporate all prior paragraphs.

141.   Denied as stated.  Solverdi may have once had interest and expectation for use of the Trade Secrets consistent with the CarrierConnect-Solverdi License Agreement and Supply Agreement, but Solverdi lost those interests and expectations when it breached and/or repudiated those agreements.  Solverdi can now have no interests or expectations stemming from these agreements, the Trade Secrets, or the Transformer.

142.   Denied per paragraph 141.

143.   Denied.

144.   Denied.

145.   Denied.

146.   Denied.

147.   Denied.

148.   Denied.

149.   Denied.

150.   Denied.

**RESPONSE TO NINTH CAUSE OF ACTION**

**(CONSUMER FRAUD)**

151.   Defendants incorporate all prior paragraphs.

152.   Denied.

153.   Denied.

154.   Denied.

155.   Denied.

156.   Denied.

157.   Denied.

158.   Denied.

159.   Denied.  Solverdi has no remedy at all because it has no claims.

160.   Denied.

161.   Denied.

162.   Denied.

163.   Denied.

164.   Denied.

## RESPONSE TO TENTH CAUSE OF ACTION

## (LANHAM ACT)

165.   Defendants incorporate all prior paragraphs.

166.   Denied as stated.  Defendants have lawful possession and ownership of the Trade Secrets.  All other allegations are denied.

167.   Denied.

168.   Denied.

169.   Denied.

170.   Denied.

171.   Denied.

172.   Denied.  Solverdi has no remedy at all because it has no claims.

173.   Denied.

174.   Denied.

175.   Denied.

176.   Denied.

177.   Denied.

Defendants deny all allegations not specifically admitted.

## PRAYER

Defendants deny Plaintiffs' prayer for relief.

## II.   AFFIRMATIVE DEFENSES

**First Affirmative Defense**:  The Complaint fails to state a claim upon which relief may be granted.

**Second Affirmative Defenses:** The Complaint is barred by the doctrine of estoppel.

**Third Affirmative Defense:**   The Complaint is barred by the doctrines of accord and satisfaction, and settlement.

**Fourth Affirmative Defense:**   The Complaint is barred by the doctrine of waiver.

**Fifth Affirmative Defense:**  The Complaint is barred in whole or in part based on the doctrine of set-off.

**Sixth Affirmative Defense:**   The Complaint is barred by the doctrine of unclean hands.

**Seventh Affirmative Defense:**  The Complaint is barred by the doctrines of prior breach and repudiation.

## III.   COUNTERCLAIMS

### <u>SUMMARY</u>

1.      Solverdi's complaint against BioFuels, Davanzo and Fedyna is premised on the position that Solverdi developed Intellectual Property and Trade Secrets concerning a process for developing biodiesel; Solverdi commissioned construction of the Transformer to process and manufacture biodiesel; and that Davanzo and BioFuels misappropriated Solverdi's Technology and stole Transformer.   That position is abjectly false, and Solverdi knows it.

2.      The truth is Davanzo invented and developed the Technology; Davanzo assigned the Technology to CarrierConnect LLC; CarrierConnect licensed the Technology to Solverdi; pursuant to the license Solverdi commissioned Olson Precast to build a Transformer; Solverdi never paid for the Transformer, so Olson Precast reconfigured it and leased the reconfigured machine to BioFuels to manufacture home heating oil; and Solverdi has quitclaimed any right or title it may have had in the Transformer or the reconfigured machine to Olson Precast.   These facts are established by the parties' agreements and Solverdi's recent settlement of litigation against Olson Precast, and cannot possibly be disputed by Solverdi.

3.      Solverdi's knowingly false complaint is a breach and repudiation of its license agreement with BioFuels, and is groundless and frivolous.

## PARTIES, JURISDICTION AND VENUE

4.      Counterclaimants are Defendants BioFuels of Colorado, LLC (BioFuels) and Thomas A. Davanzo.   BioFuels is the assignee of the biodiesel Technology invented and developed by Davanzo, and that Davanzo initially assigned to CarrierConnect LLC.

5.      Counterclaim Defendant is Solverdi LLC (Solverdi).

6.      This Court has properly acquired jurisdiction over this matter, the parties have assented to this Court's exercise of jurisdiction, and BioFuels does not contest

2611982

19

venue.   The license agreement between BioFuels' assignor CarrierConnect and Solverdi provides for jurisdiction and venue in Arizona courts.  However, federal law generally holds that once jurisdiction attaches, it sticks.  *See*, *e.g.*, *Cunningham Charter Corporation v. Learjet, Inc.*, No. 09-8042 (7th Cir. 1/22/10) (per Posner, J.) slip op. at 4-5.  Maintaining jurisdiction in this Court will better effect a just, speedy and inexpensive determination of this action.  F.R.C.P. 1.  Jurisdiction and venue therefore remain proper in this Court.

## GENERAL ALLEGATIONS

7.      Davanzo invented and developed systems and technical information for manufacturing biodiesel (ASTM D 6751) and other renewable diesel fuels. Solverdi's Complaint defines this knowledge as the Intellectual Property or Trade Secrets; this Counterclaim will use the term Technology.

8.      Davanzo assigned his Technology to CarrierConnect, LLC.

9.      Dennis Danzik, a principal of Solverdi, expressed interest in implementing Davanzo's Technology to manufacture biodiesel.

10.      Danzik introduced Davanzo to Michael Olson, the principal of Olson Precast Company and 3A3B LLC, companies with the capacity to manufacture a transformer capable of implementing the Technology to produce biodiesel.

### A.   The Three Agreements

11.   On August 1, 2008, the parties entered into three agreements that essentially define all of the rights, duties and liabilities at issue in this litigation:

- The "Amended and Restated Technical Information Development Agreement" between CarrierConnect, Solverdi and Olson Precast (called the "CarrierConnect-Solverdi License Agreement"), **Exhibit 1**;

- the "Supply Agreement" between Solverdi and 3A3B LLC, which Solverdi mentions in its Complaint, **Exhibit 2**; and

- the "Contribution Agreement" among, *inter alia*, Solverdi, Michael Olson, Dennis Danzik, and BioFuels, **Exhibit 3**.

12.   These agreements have confidentiality provisions, and are therefore submitted under seal.  The confidentiality concerns pertain to the nature and details of the Technology.   Counterclaimants therefore do not discuss any details of the Technology, but only those provisions of the agreements concerning ownership of the Technology dispositively establishing that Solverdi's Complaint is false.

### a.   The CarrierConnect-Solverdi License Agreement

13.   The CarrierConnect-Solverdi License Agreement is the vehicle through which Solverdi obtained access to the Technology invented and developed by Davanzo, and that Solverdi falsely alleges it owns and Davanzo stole.

14.   The CarrierConnect-Solverdi License Agreement contains the following relevant provisions:

- It recites that Davanzo invented and developed the Technology; he assigned the Technology to CarrierConnect; and that Solverdi wants to license the Technology to produce biodiesel. **Exhibit 1**, p. 1 ¶¶ A-B.

- Solverdi acknowledges that CarrierConnect is "sole owner of Technical Information and Licensed Rights" *i.e.* the Technology. *Id.* at p. 10 ¶ NN.

- Solverdi agrees that it "shall not take any action challenging or opposing, on any grounds whatsoever" CarrierConnect's rights to the Technology. *Id.* at p. 10 ¶ OO.

- Solverdi is required to build "plants" for manufacturing biodiesel (*i.e.* Transformers) according to a schedule, and to pay CarrierConnect a $.26/gallon royalty for all fuel produced by these plants. *Id.* at p. 5 ¶¶ L-M and p. 7 ¶¶ V-X.

- Solverdi would build these plants through the Supply Agreement with 3A3B LLC. *Id.* at p. 7 ¶ X.

- CarrierConnect reserved the rights to manufacture any type of fuel other than the specific biodiesel that was the subject of the license agreement. *Id.* at p. 2 ¶ G, p. 5 ¶ L.

- CarrierConnect could assign its rights under the Agreement to any person or entity. *Id.* p. 13 ¶ III.

- In the event of breach, the prevailing party recovers its fees in litigation. *Id.* pp. 15-16 ¶ QQQ.

**b.     The Supply Agreement**

15.     Solverdi commissioned Olson's company 3A3B LLC to construct a Transformer – a machine that implements the Technology to manufacture biodiesel – in the Supply Agreement.

16.     The Supply Agreement contains the following relevant provisions:

- A recital that Solverdi has obtained a license from CarrierConnect to produce biodiesel using the Technology.  **Exhibit 2** at p. 1 ¶ A.

- Solverdi will pay 3A3B to build a System using the Technology licensed from CarrierConnect to produce biodiesel.  *Id.* at p. 2 ¶ 2.1 – p. 3, ¶ 3.7.

    **c.**        **The Contribution Agreement**

17.    The Contribution Agreement details the parties' investments in Solverdi's venture to manufacture biodiesel using the Technology.  Solverdi's investors included Michael Olson and the Olson Family Trust; and Dennis Danzik and his investment group Belmont Partners.  **Exhibit 3**, parties and recitals.

18.    BioFuels did not invest in Solverdi, but was party to the Contribution Agreement because it leased its laboratory to Solverdi to work on the Technology.  *Id.* at ¶ 3.5.

19.    All three agreements were executed on the same day: August 1, 2008. Solverdi is a signatory to all three Agreements.

20.    Solverdi's Complaint references the Supply Agreement.  *See* Solverdi Complaint at, *e.g.*, ¶¶ 17, 19, 22.

21.    The Supply Agreement references the CarrierConnect-Solverdi License Agreement, and vice versa.

22.    Solverdi's Complaint references the lease of BioFuels' lab which is addressed in the Contribution Agreement.  *See* Solverdi Complaint at ¶ 48.

**B.    Solverdi refuses to pay for the Transformer**

23.    CarrierConnect has assigned its rights to the CarrierConnect-Solverdi License Agreement to BioFuels.  BioFuels now owns the Technology, and has standing to bring these counterclaims against Solverdi for breach and repudiation of the CarrierConnect-Solverdi License Agreement.

24.    Pursuant to the agreements, 3A3B constructed a Transformer for manufacturing biodiesel using the Technology.  The Transformer was built at Olson Precast's facilities in Arizona.

25.    Solverdi failed or refused to pay for the Transformer.

26.    In May 2009 3A3B notified Solverdi that if it would not fulfill its obligations under the Supply Agreement to purchase the Transformer, 3A3B would reconfigure the Transformer into a different machine to produce different products.

27.    Solverdi still did not pay for the Transformer, so in June 2009 3A3B reconfigured it into a different machine.

28.    As a result, the Transformer referenced in Solverdi's complaint ceased to exist as of June 2009.  All references in Solverdi's September 2009 Complaint in this action to theft of the Transformer really refer to dealings with the reconfigured machine that was initially intended to be the Transformer, but that Solverdi refused to

purchase in breach of obligations under the Supply Agreement and the CarrierConnect-Solverdi License Agreement.

29.    Olson Precast offered to sell the reconfigured machine to Davanzo, but Davanzo did not purchase it.

30.    Instead, BioFuels leased the reconfigured machine from Olson Precast, transported it to New Jersey, and installed it in BioFuels' warehouse in Belleville, New Jersey.

31.    BioFuels intended to use the reconfigured machine to produce home heating oil – a product in high demand on the east coast – starting with the winter 2009-10 season.    The CarrierConnect-Solverdi License Agreement reserved to BioFuels the right to produce other fuels besides biodiesel, such as home heating oil.

32.    In December 2008 Olson Precast sued Dennis Danzik and Solverdi for fraud in Arizona state court, *Olson Precast Company et al v. Danzik et al*, Maricopa County case no. CV 2008-054870.  Olson Precast (an investor in Solverdi) essentially accused Danzik of committing fraud by persuading Olson Precast to invest in Solverdi's biodiesel business, but then converting Solverdi's corporate assets.

33.    In June 2009 Solverdi sued Olson Precast in Arizona federal court, *Solverdi LLC et al v. Olson Precast Company et al*, no. 09-CV-1279, U.S. District Court for the District of Arizona.  Solverdi's complaint recited how Olson Precast had

reconfigured the Transformer and accused Olson Precast of transporting the reconfigured machine out of Arizona. Solverdi asserted eleven claims against Olson Precast, similar to the claims asserted in this action, and similarly premised on the position that Solverdi owned the Technology and Olson Precast had wrongfully converted the Technology and resulting Transformer.

34.    Olson Precast's position in both Arizona actions was that Solverdi breached the Supply Agreement by not paying for the Transformer; Solverdi thereby lost any claim of title or possession of the Transformer; Olson Precast properly mitigated by reconfiguring the Transformer into a new and different machine and leasing it to BioFuels; and that even if the reconfigured machine were still considered to be the Transformer, Olson Precast was entirely within its rights under the UCC to take possession of the Transformer and sell or lease it due to Solverdi's refusal to pay for it.

35.    BioFuels was aware of the Arizona litigation, and that it involved a dispute over title to the Transformer or the reconfigured machine that once was the Transformer. BioFuels was also aware that Olson Precast had either lawful title to the machine, or at the minimum a lawful and rightful claim to possess the machine, which supported BioFuels' lease of the machine.

36.     The Arizona federal court stayed the federal case under *Colorado River* abstention, in favor of the state case.  Solverdi was nonetheless able to use discovery in the Arizona litigation to discover that Olson Precast had leased the reconfigured machine to BioFuels, and that the machine was in New Jersey.

37.     In September 2009, Solverdi filed its Complaint against BioFuels and Davanzo in New Jersey state court.  Solverdi also obtained an *ex parte* TRO in state court that enjoined BioFuels from using the reconfigured machine to produce home heating oil.

38.     BioFuels removed the New Jersey action to this Court.  It also acceded to extensions of the state court TRO in anticipation of a comprehensive settlement of the Arizona litigation between Solverdi and Olson Precast that would include the dismissal of Solverdi's claims in this action.

39.     Due to the TRO and the extensive delays in settling the Arizona litigation, BioFuels has now lost the opportunity to use the reconfigured machine to manufacture home heating oil for the winter 2009-10 season.

40.     On December 16, 2009, Solverdi and Olson Precast settled the Arizona litigation.  Solverdi's settlement further confirms that its claims in this action are baseless.

41.     Solverdi's December 16, 2009 settlement of the Arizona litigation eliminated any possible remaining basis for the *ex parte* TRO that it obtained from the New Jersey state court before removal of this action, and Solverdi should have dropped its opposition to BioFuels' motion to dissolve that TRO.   Solverdi nonetheless continued to seek enforcement of the TRO at the December 21, 2009 hearing on BioFuels' motion to dissolve it.

42.     On January 5, 2010, counsel for Solverdi informed the Court "that developments in a separate action pending in Arizona have obviated the need for the TRO", and withdrew Solverdi's objections to BioFuel's motion to dissolve the TRO. The Court therefore dissolved the TRO and dismissed BioFuel's motion for a bond as moot.

### FIRST COUNTERCLAIM

### (BREACH OF CONTRACT – CARRIERCONNECT-SOLVERDI LICENSE AGREEMENT)

43.     Counterclaimants incorporate all prior paragraphs.

44.     Solverdi has breached the CarrierConnect-Solverdi License Agreement by failing to manufacture biodiesel-producing plants according to the schedule set forth in the License Agreement.  **Exhibit 1** at p. 5 ¶¶ L-M and p. 7 ¶¶ V-X.

45.     Solverdi has also breached the CarrierConnect-Solverdi License Agreement by filing this action.

46.   In particular, every allegation in Solverdi's Complaint in which Solverdi claims that it invented, developed or owns the Technology, or that BioFuels and Davanzo stole the Technology, is false because Solverdi licensed the Technology from Davanzo through CarrierConnect.  *See* Solverdi's Complaint at, *e.g.* ¶¶ 13, 16, 26, 28, 29, 33, 40, 43-45, 47, 55, 61, 70.   Solverdi knows that these allegations are false.

47.   Every such allegation constitutes breach of Solverdi's acknowledgment that CarrierConnect (now BioFuels) is sole owner of the Technology.  *Id.* at p. 10 ¶ NN.

48.   Solverdi's Complaint constitutes a breach of Solverdi's obligation in the CarrierConnect-Solverdi License Agreement not to "take any action challenging or opposing, on any grounds whatsoever" BioFuels' rights to the Technology.  *Id.* at p. 10 ¶ OO.

49.   BioFuels' damages include all of its attorney fees and costs expended in this litigation (which are also recoverable under the License Agreement's fee-shifting provision), and lost opportunity damages stemming from its inability to use the reconfigured machine to produce home heating oil for the 2009-10 season due to Solverdi's interference and wrongfully obtained *ex parte* TRO.

## SECOND COUNTERCLAIM

**(DECLARATORY JUDGMENT AND INJUNCTION – REPUDIATION OF
CARRIERCONNECT-SOLVERDI LICENSE AGREEMENT)**

50.     Counterclaimants incorporate all prior paragraphs.

51.     Solverdi's actions and conduct in this matter go far beyond an ordinary breach of contract.  Solverdi's false claims that it owns the Technology and that Davanzo and BioFuels stole the Technology are so fundamentally contrary to the parties' rights and obligations as to amount to a repudiation of the CarrierConnect-Solverdi License Agreement.

52.     BioFuels therefore requests that the Court enter a Declaratory Judgment that Solverdi has repudiated the CarrierConnect-Solverdi License Agreement, has thereby lost all rights under it, and that BioFuels is relieved of all obligations under it.

53.     In particular, BioFuels seeks a declaration that Solverdi has lost any exclusive right to use the Technology to manufacture biodiesel, and that BioFuels may now license or practice the Technology to manufacture biodiesel as it sees fit.

54.     BioFuels also seeks an injunction prohibiting Solverdi, and any persons or entities acting in concert with Solverdi, from using BioFuels' Technology without BioFuels' express and written permission.

55.     Davanzo, as inventor and assignor of the Technology, has a personal interest in obtaining a determination that Solverdi has repudiated its license to use the

2611982

30

Technology, and also in obtaining an injunction against Solverdi's further use of the

Technology save as permitted by Davanzo and his assignee BioFuels.

## **PRAYER FOR RELIEF**

WHEREFORE, Counterclaim Plaintiffs BioFuels and Davanzo pray for

judgment against Counterclaim Defendant Solverdi as follows:

- Damages for Solverdi's breaches of the CarrierConnect-Solverdi License Agreement;

- A declaratory judgment that Solverdi has repudiated the CarrierConnect-Solverdi License Agreement, and has thereby lost all rights under it, that BioFuels is relieved of all obligations under it;

- A permanent injunction prohibiting Solverdi, and any person or entity acting in concert with Solverdi, from using the Technology, save as expressly permitted by BioFuels.

- All fees, costs and interest permitted at law and equity.

Respectfully submitted,

POLSINELLI SHUGHART PC
Attorneys for Defendants and
Counterclaim Plaintiffs BioFuels,
Davanzo and Fedyna

By:

*/s/ Justin K. Edelson*

JUSTIN K. EDELSON
N.J. bar no. 028342007
222 Delaware Avenue, Suite 1101
Wilmington, DE 19801
jedelson@polsinelli.com

RONALD G. ROSSI
Colo. bar no. 10388
1515 Wynkoop St., Ste. 600
Denver CO 80202
*admitted pro hac vice*

DATED: February 17, 2010